HOWARD A. KROLL, CA Bar No. 100981
howard.kroll@cph.com
KATHERINE L. QUIGLEY, CA Bar No. 258212
katherine.quigley@cph.com
CHRISTIE, PARKER & HALE, LLP
655 N. Central Avenue, Suite 2300
Glendale, California 91203-1445
Telephone: (626) 795-9900
Facsimile: (626) 577-8800

Attorneys for Plaintiff,
OKO INTERNATIONAL CO.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| OKO INTERNATIONAL CO., | Case No. 3:14-cv-01542-CRB |
| Plaintiff, | **PLAINTIFF OKO INTERNATIONAL CO.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| vs. | |
| SONY MOBILE COMMUNICATIONS (U.S.A.), INC., | **DATE: August 8, 2014** |
| Defendant. | **TIME: 10:00 a.m.** |
| | **CTRM: 6, 17th Floor** |
| | **Hon. Charles R. Breyer** |

CHRISTIE, PARKER & HALE, LLP

Points And Authorities In Oppos. To Deft's Motion To Dismiss, Case No. 3:14-cv-01542-CRB

# TABLE OF CONTENTS

**Page**

I.  STATEMENT OF FACTS ............................................................................. 2

II.  ARGUMENT ............................................................................................... 5

    A.  Sony's Motion To Dismiss Should Be Denied Because The Doctrine Of Nominative Fair Use Is Inapplicable To This Case ................................ 5

    B.  The Issue Of Nominative Fair Use Cannot Be Resolved in Sony's Favor ............ 6

        1.  Sony's Motion to Dismiss Should Be Denied Because The Question Of Nominative Fair Use Cannot Be Determined On A Motion To Dismiss ................................................................................ 7

        2.  Sony's Motion to Dismiss Should Be Denied Because Sony's Use Of OKO's ANDROID And ANDROID SMARTWATCH Marks Is An Infringing, Trademark Use That Does Not Qualify As Nominative Fair Use ............................................................................ 8

            a)  Sony's "SmartWatch" Product Is Readily Identifiable Without Use Of OKO's ANDROID And ANDROID SMARTWATCH Marks ................................................. 9

            b)  The Extent Of Sony's Use Of OKO's ANDROID and ANDROID SMARTWATCH Marks Is More Than Reasonably Necessary To Identify The Product ......................... 10

            c)  Sony's Use Of OKO's ANDROID and ANDROID SMARTWATCH Marks Suggests Sponsorship Or Endorsement By OKO ................................................... 11

III.  CONCLUSION ............................................................................................ 14

Points And Authorities In Oppos. To Deft's Motion To Dismiss, Case No. 3:14-cv-01542-CRB

-i-

CHRISTIE, PARKER & HALE, LLP

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

CASES

4

*1800 GET THIN, LLC v. Hiltzik,*
　2011 WL 3206486 (C.D. Cal. July 25, 2011) .......................................................... 14

5

*Abdul-Jabbar v. Gen. Motors Corp.,*
　85 F.3d 407 (9th Cir. 1996) .................................................................................. 8

6

7

*Adaptive Mktg. LLC v. Girard Gibbs LLP,*
　2009 WL 8464168 (C.D. Cal. Oct. 9, 2009) .......................................................... 14

8

9

*Architectural Mailboxes, LLC v. Epoch Design, LLC,*
　2011 WL 1630809 (S.D. Cal. April 28, 2011) ........................................................ 14

10

*Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.,*
　2008 WL 6742224 (N.D. Cal. Dec. 18, 2008) ....................................................... 3, 7

11

12

*Brother Records v. Jardine,*
　318 F.3d 900 (9th Cir. 2003) ............................................................................ 5, 6

13

14

*Cairns v. Franklin Mint Co.,*
　292 F.3d 1139 (9th Cir. 2002) ...................................................................... 5, 8, 10

15

16

*Canfield v. Health Communs., Inc.,*
　2008 U.S. Dist. LEXIS 28662 (C.D. Cal. April 1, 2008)........................................... 12

17

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.,*
　547 F.3d 1095 (9th Cir. 2008).......................................................................... 2, 5, 6

18

19

*Elec. Arts, Inc. v. Textron Inc.,*
　2012 U.S. Dist. LEXIS 103914 (N.D. Cal. July 25, 2012) ..................................... 2, 7, 8

20

21

*Estate of Fuller v. Maxfield & Oberton Holdings,*
　906 F. Supp. 2d 997 (N.D. Cal. 2012).................................................................. 6

22

*Experience  Hendrix L.L.C. v. Hendrixlicensing.com, L.L.C.,*
　742 F.3d 377 (9th Cir. 2014) ............................................................................. 6

23

24

*Films of Distinction, Inc. v. Allegro Film Prods., Inc.,*
　12 F. Supp. 2d 1068 (C.D. Cal. 1998)................................................................. 6

25

26

*Haas Automation, Inc. v. Denny,*
　2013 U.S. Dist. LEXIS 179094 (C.D. Cal. December 4, 2013).................................. 9

27

*Horphag Research Ltd. v. Pellegrini,*
　337 F.3d 1036 (9th Cir. 2003) ........................................................................... 3

28

CHRISTIE, PARKER & HALE, LLP

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
  11 F.3d 1460 (9th Cir. 1993) ...................................................................... 7, 8

*KEMA, Inc. v. Koperwhats*,
  2010 U.S. Dist. LEXIS 90803 (N.D. Cal. September 1, 2010) .................................. 7

*KP Permanent Make-Up, Inc. v. Lasting  Impression I, Inc.*,
  408 F.3d 596 (9th Cir. 2005) ...................................................................... 7

*L&A Designs v. Xtreme ATVs, Inc.*,
  2012 U.S. Dist. LEXIS 60760 (D. Or. April 30, 2012) ....................................... 6, 13

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ..................................................................... 6

*New Kids on the Block v. News America Pub., Inc.*,
  971 F.2d 302 (9th Cir. 1992) ................................................................ 3, 8, 9

*Playboy Enterprises v. Welles*,
  279 F.3d 796 (9th Cir. 2002) .................................................................. 13, 14

*Playboy Enterprises v. Netscape Communs. Corp.*,
  354 F.3d 1020 (9th Cir. 2000) ...................................................................... 7

*Stevo Design, Inc. v. SBR Marketing Ltd.*,
  968 F. Supp. 2d 1082 (D. Nev. 2013) .............................................................. 14

*Summit Entm't, LLC v. B.B. Dakota, Inc.*,
  2011 U.S. Dist. LEXIS 151582 (C.D. Cal. November 21, 2011) ............................ 9, 10, 11

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
  610 F.3d 1171 (9th Cir. 2010) ................................................................ 6, 12

*Yeager v. Cingular Wireless LLC*,
  627 F. Supp. 2d 1170 (E.D. Cal. 2008) ............................................................. 9

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6)........................................................ 6, 7

4 McCarthy on Trademarks and Unfair Competition,
  §23:11.50 (4th ed.) .............................................................................. 14

CHRISTIE, PARKER & HALE, LLP

1

## INTRODUCTION

2    Plaintiff OKO International Co. ("OKO") is the owner of the ANDROID and

3  ANDROID SMARTWATCH trademarks for watches and timepieces. (Compl. ¶¶ 7-9.)

4  Defendant Sony Mobile Communications (U.S.A.), Inc. ("Sony") is advertising and selling its

5  SmartWatch under the titles "Sony Smartwatch Android Watch," "Android[TM] watch,"

6  "Android[TM] compatible watch" and "Android compatible SmartWatch" (Compl. ¶ 21; Compl.

7  Ex. C at 42, 43, 45 and 48.) Sony also is using the term "Android watch" as a metatag to

8  promote its products on the Internet. (Compl. ¶ 22.) OKO brought this complaint because

9  Sony's actions infringe OKO's ANDROID and ANDROID SMARTWATCH trademarks.

10    Sony claims in its Motion to Dismiss that it is using the term "Android" to "refer to

11  Google's operating system" and, as such, OKO's claims are barred by the doctrine of

12  nominative fair use. Motion to Dismiss, p. 1. Sony's motion, however, should be denied

13  because the nominative fair use defense does not apply to this case. By definition, nominative

14  fair use applies only when a defendant is using the plaintiff's mark to identify not its own

15  product, but the **plaintiff's** product. *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547

16  F.3d 1095, 1098 (9th Cir. 2008). In this case, however, Sony claims that it is using the

17  ANDROID and ANDROID SMARTWATCH marks **not** to identify OKO's ANDROID watch

18  or ANDROID SMARTWATCH products. Rather, Sony claims it is using the term "Android"

19  to identify Sony's own product and the fact that it is "compatible with mobile devices running

20  Google's Android operating system." Motion to Dismiss, p. 1. As such, as a matter of law,

21  Sony is not entitled to a nominative fair use defense.

22    Even if the nominative fair use defense were applicable here, however, the question of

23  nominative fair use cannot be resolved in Sony's favor. As an initial matter, this court has

24  repeatedly declined to grant a motion to dismiss based on nominative fair use because analysis

25  of nominative fair use is premature on such a motion. *See, e.g., Elec. Arts, Inc. v. Textron Inc.*,

26  2012 U.S. Dist. LEXIS 103914, at *14 (N.D. Cal. July 25, 2012) ("Nominative fair use analysis

27  typically involves questions of law and fact, and determination on a motion to dismiss is

28  premature"). The nominative fair use inquiry is factual in nature and therefore cannot be

1    resolved at the pleading stage.  *Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, 2008

2    WL 6742224, at *5 (N.D. Cal. Dec. 18, 2008).

3          Even if the nominative fair use defense were not premature, Sony does not satisfy all

4    three elements of the Ninth Circuit's test for nominative fair use.  *See New Kids on the Block v.*

5    *News America Pub., Inc.,* 971 F.2d 302, 308 (9th Cir. 1992) (establishing the three-prong test

6    for nominative fair use).  Specifically, Sony's SmartWatch product is readily identifiable

7    without the use of OKO's ANDROID and ANDROID SMARTWATCH marks; Sony is using

8    OKO's ANDROID and ANDROID SMARTWATCH marks more than is reasonably necessary

9    to identify its "SmartWatch" product; and Sony's use of OKO's ANDROID and ANDROID

10   SMARTWATCH marks suggests sponsorship or endorsement by OKO.  For example, Sony

11   repeatedly uses statements such as "works with most Android phones" (Compl. Ex. C at 42) or

12   "works with any smartphone or tablet running Android 4.0 or later" (Compl. Ex. C at 46) or "If

13   you have an Android smartphone, here is the perfect accessory" (Compl. Ex. C at 49).  As such,

14   Sony does not also need to use the terms "Android watch," or "Android compatible watch" or

15   "Android compatible Smartwatch" (Compl. Ex. C at 42, 43, 45, 48).  At the very least, there are

16   disputed questions of fact as to all three elements, which is sufficient reason to deny Sony's

17   motion to dismiss at this stage.

18         For these reasons, the Court should deny Sony's motion to dismiss.

19   **I.     <u>STATEMENT OF FACTS</u>**

20         OKO has been in the business of designing, creating, and marketing watches for 20

21   years.  (Compl. ¶ 6.)  OKO markets its watches under its ANDROID and

22   ANDROID SMARTWATCH trademarks, and is the owner of United States Trademark

23   Registration No. 3,467,615 for ANDROID for timepieces, watches and watch bands.  (Compl.

24   ¶¶ 7, 9; Compl. Ex. A.)  Additionally, OKO owns common law rights in its

25   ANDROID SMARTWATCH trademark due to its substantial use of the term in commerce to

26   identify and distinguish its watches.  (Compl. ¶ 8.)  OKO advertises and sells its ANDROID

27   and ANDROID SMARTWATCH brand watches over the World Wide Web through its website

28

CHRISTIE, PARKER & HALE, LLP

1   www.android-usa.com, and has sold its ANDROID and ANDROID SMARTWATCH brand

2   products throughout the United States to the general public.  (Compl. ¶¶ 11, 12.)

3          Sony is in the business of, among other things, manufacturing, marketing and selling

4   watches and is therefore in direct competition with OKO's business.  (Compl. ¶ 14, 15.)  In

5   particular, Sony manufactures and sells a line of "Smart Watches" that interface with

6   smartphones and tablets running Google's Android operating system.  Motion to Dismiss, p. 2.[1]

7   Sony advertises and markets its watches to consumers in the United States, including through

8   its website www.sonymobile.com.  (Compl. ¶¶ 16, 17; Motion to Dismiss, p. 2.)

9          In particular, Sony advertises and sells or has advertised and sold watches under the

10  titles "Sony Smartwatch Android Watch," "Android™ watch," "Android™ compatible watch"

11  and "Android compatible SmartWatch."  (Compl. ¶ 21; Compl. Ex. C.)  As shown in Exhibit C

12  of the Complaint, Sony's SmartWatch product listing has appeared among the top search

13  results on the first page of the Google search engine results page for the search term "android

14  watch."  (Compl. Ex. C at 40.)  The term "Android watch" appears in the title of the product

15  listing and in the description beneath the URL.  (*Id*.)

16         Exhibit C also contains printouts of Sony's ads for its SmartWatch products as

17  displayed on the www.sonymobile.com website on December 11, 2012, February 25, 2014, and

18  April 1, 2014.  The December 11, 2012 ad for Sony's "SmartWatch" product uses the term

19  "Android™ watch" at the top of the page, beneath the title and next to an image of the product.

20  (Compl. Ex. C at 42.)  The ad states, "SmartWatch is also known as an Android watch because

21  it works with most Android phones."  (Compl. Ex. C at 42.)  The ad makes two additional

22  references to the term "Android watch," by stating that "This Android watch has a three-level

23  micro display," and "An Android watch makes life easy."  (Compl. Ex. C at 43.)  The ad also

24  uses the term "Android" in the statements "works with most Android phones" (Compl. Ex. C at

25

26  [1]   Google does not own a trademark for ANDROID for watches.  (Compl. ¶ 23.)  Google
    publishes brand guidelines for its common law ANDROID trademark at
27  www.developer.android.com/distribute/googleplay/promote/brand.html.  (Compl. ¶ 24; Compl.
    Ex. E.)  Pursuant to Google's brand guidelines, "ANDROID cannot be used in names of
28  applications or accessory products, including . . . **watches**." (Compl. ¶ 24, emphasis added).

CHRISTIE, PARKER & HALE, LLP

42) and "If you have an Android smartphone, here is the perfect accessory" (Comp. Ex. C at 43).

The February 25, 2014 ad for Sony's "SmartWatch 2 SW2" product again uses the ANDROID and ANDROID SMARTWATCH marks at the top of page, by stating "Made for Android" and "world's first Android compatible SmartWatch" beneath the title next to an image of the product.   (Compl. Ex. C at 45.)   The ad also uses the heading "Android-compatible" to describe a feature of the product, and states that the product "works with any smartphone or tablet running Android 4.0 or later." (Compl. Ex. C at 46.)

The April 1, 2014 ad appears to be a revised version of the December 11, 2012 ad for Sony's "SmartWatch" product.  In the April 1, 2014 version, the term "Android™ compatible watch" is used at the top of the page, beneath the product title and next to an image of the product. (Compl. Ex. C at 48.)  Instead of "An Android watch makes life easy" as stated in the December 11, 2012 ad, the April 1, 2014 ad states, "SmartWatch makes life easy."  (Compl. Ex. C at 49.)  The ad also includes the statement "works with most Android phones."  (Compl. Ex. C at 49.)

Sony also uses or has used the term "Android watch" as a metatag to promote and advertise its products on the Internet in violation of OKO's trademark rights.  (Compl. ¶ 22; Compl. Ex. D.)  Exhibit D of the Complaint contains a printout of the source code from Sony's www.sonymobile.com website.   The term "Android watch" appears throughout the source code, for example at lines 9, 10, 36, 297, 335, 381, and 444 of the source code.  (Compl. Ex. D at 51, 53, 54.)

OKO has not authorized Sony to copy, reproduce, manufacture, duplicate, disseminate, advertise, market or distribute watches bearing a trademark that is the same as or confusingly similar to OKO's ANDROID and ANDROID SMARTWATCH marks.  (Compl. ¶ 19.)

Points And Authorities In Oppos. To Deft's Motion To Dismiss, Case No. 3:14-cv-01542-CRB
-4-

CHRISTIE, PARKER & HALE, LLP

## II.   ARGUMENT

### A.   Sony's Motion To Dismiss Should Be Denied Because The Doctrine Of Nominative Fair Use Is Inapplicable To This Case

Sony's motion should be denied because the doctrine of nominative fair use does not apply to this case.  According to the Ninth Circuit, "nominative fair use occurs when the defendant uses the trademarked term to describe **not its own product**, but the **plaintiff's**." *E.S.S. Entm't 2000, Inc.*, 547 F.3d at 1098 (citations and quotations omitted)(emphasis added); *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1152 (9th Cir. 2002) ("courts should use the *New Kids* nominative fair use analysis in cases where the defendant has used the plaintiff's mark **to describe the plaintiff's product**, even if the defendant's ultimate goal was to describe his own product")(emphasis added); *Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d 1068, 1076 (C.D. Cal. 1998) ("[t]hus far, the Ninth Circuit has only permitted nominative fair use **where defendant refers to plaintiff's product**")(emphasis added).

Sony acknowledges as much in its Motion to Dismiss.  *See* Motion to Dismiss, p. 5 (*quoting Cairns*, 292 F.3d at 1151 for the proposition that "nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, *even if the defendant's ultimate goal is to describe his own product*")(emphasis in original). Indeed, several of the cases relied upon by Sony in its Motion to Dismiss make clear that nominative fair use applies only where a defendant uses the mark to describe the plaintiff's product rather than defendant's own product.  *See*, *e.g.*, *Brother Records v. Jardine*, 318 F.3d 900, 904 (9th Cir. 2003) ("[t]he nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product").

A defendant raising the defense of nominative fair use, therefore, must show that it is using the mark to refer to the plaintiff's trademarked goods or services.  *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1182-1183 (9th Cir. 2010).  *See also L&A Designs v. Xtreme ATVs, Inc.*, 2012 U.S. Dist. LEXIS 60760, at *15 (D. Or. April 30, 2012) (referring to this requirement as the "threshold condition" for nominative fair use).  Sony, however, has not shown, nor can it show, that it is using the ANDROID and ANDROID SMARTWATCH

trademarks to refer to OKO's trademarked goods or services.  On the contrary, Sony repeatedly asserts that it is using the ANDROID and ANDROID SMARTWATCH marks to describe its own products.  *See* Motion to Dismiss, p. 7 (describing "Sony's efforts to inform its customers of an important attribute of the Sony SmartWatches); p. 8 (describing use of the ANDROID mark "to indicate that the Sony SmartWatch is compatible with mobile products using Google's Android operating system"); p. 9 (describing use of the ANDROID mark "to reference the compatibility of Sony's products").  Sony's admissions are similar to those of the defendant in *E.S.S. Entm't 2000, Inc.*, who testified that its goal in using the mark was not to comment on the plaintiff's business per se.  547 F.3d at 1099.  The defendant also did not use the plaintiff's trademarked logo to describe the plaintiff's business.  *Id*.  Therefore, the Ninth Circuit found that the nominative fair use defense did not apply to the case.  *Id*.  Similarly, here, Sony indicates that its intent was not to reference OKO or any of OKO's products, and that it does not use any of OKO's stylized logos or graphics in connection with its use of the ANDROID mark.  Motion to Dismiss, p. 9.

In view of these admissions by Sony, the defense of nominative fair use simply does not apply.  *See Brother Records*, 318 F.3d at 904; *see also Experience Hendrix L.L.C. v. Hendrixlicensing.com*, L.L.C., 742 F.3d 377, 387 (9th Cir. 2014) (affirming the district court's rejection of the nominative fair use defense and conclusion that the defendant used the plaintiff's mark to refer, not to plaintiff's products "as is required for a nominative fair use defense," but only to defendant's own product, "which is not protected under the nominative fair use defense").  Therefore, as a matter of law, the Court should deny Sony's motion.

**B.**      **The Issue Of Nominative Fair Use Cannot Be Resolved in Sony's Favor**

Even if the nominative fair use defense were applicable here, however, the question of nominative fair use cannot be resolved in Sony's favor.  In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all allegations of material fact as true and construes the pleadings in the light most favorable to the plaintiff."  *Estate of Fuller v. Maxfield & Oberton Holdings*, 906 F. Supp. 2d 997, 1003 (N.D. Cal. 2012) (*citing Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)).  Regardless of the

CHRISTIE, PARKER & HALE, LLP

likelihood of recovery, "a court must allow [a] plaintiff the opportunity to develop a case." *Autodesk, Inc.*, 2008 WL 6742224, at *2. Thus, "[d]ismissal is only proper if there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.*

> ### 1. Sony's Motion to Dismiss Should Be Denied Because The Question Of Nominative Fair Use Cannot Be Determined On A Motion To Dismiss

The sole basis for Sony's Motion to Dismiss is Sony's claim that it is making nominative fair use of OKO's ANDROID and ANDORID SMARTWATCH marks. However, courts in the Northern District of California hold that analysis of nominative fair use is premature on a motion to dismiss given the factual nature of the nominative fair use inquiry. *See*, *e.g.*, *Elec. Arts, Inc.*, 2012 U.S. Dist. LEXIS 103914, at *14 ("Nominative fair use analysis typically involves questions of law and fact, and determination on a motion to dismiss is premature"); *KEMA, Inc. v. Koperwhats*, 2010 U.S. Dist. LEXIS 90803, at *10-*11 n.5 (N.D. Cal. September 1, 2010) (stating that the plaintiff's complaint "contains factual allegations sufficient to plead defendants' use of the Visualize-IT mark falsely suggests sponsorship or endorsement by plaintiffs…[u]nder such circumstances, the issue of nominative fair use remains for later resolution"); *Autodesk*, 2008 WL 6742224, at *5 (*citing KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 609 (9th Cir. 2005) and *Playboy Enters. v. Netscape Communs. Corp.*, 354 F.3d 1020, 1029 (9th Cir. 2000) in support of its conclusion that analysis of nominative fair use is premature on a motion to dismiss, "particularly given the factual nature of the inquiry"). Interestingly, Sony's Motion fails to identify any case from the Northern District to support its claim that "courts regularly dismiss trademark infringement claims under Rule 12(b)(6) on the basis of nominative fair use." Motion to Dismiss, p. 5.[2]

---

[2]  In fact, even the cases cited by Sony in support of this assertion either do not support this proposition or are readily distinguishable from the present case based on their facts. For example, the sole Ninth Circuit decision relied upon by Sony to support this argument, *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1466-67 (9th Cir. 1993), is inapposite because it was based on a theory of classic fair use, not nominative fair use. *See*

As significantly, there are questions of disputed fact in this case as to each element of the Ninth Circuit's nominative fair use test. *See Elec. Arts*, 2012 U.S. Dist. LEXIS 103914, at *15 ("EA's motion must be denied because there are questions of disputed fact as to all three elements"). The Ninth Circuit assesses nominative fair use according to a three-prong test: (1) the product in question must be one not readily identifiable without use of the trademark; (2) only so much of the mark may be used as is reasonably necessary to identify the product; and (3) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *Id*. at *14 (*citing New Kids*, 971 F.2d at 308).

In *Elec. Arts*, as in this case, the parties disagreed as to all three elements of the test. 2012 U.S. Dist. LEXIS 103914, at *15. The court found that the pleadings raised sufficient questions as to consumer confusion, and also noted that in certain contexts, "likelihood of confusion as to endorsement is [] a question for the jury." *Id*. (*citing Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 413 (9th Cir. 1996)). The court therefore denied the defendant's motion to dismiss. *Id*. at *16. Here, as discussed in further detail in Section 2 below, and similar to the *Elec. Arts* case, there are sufficient factual disputes regarding each element of the Ninth Circuit's three-prong test. For example, the parties disagree as to whether Sony's product is readily identifiable without the use of OKO's ANDROID mark, whether Sony used more of the mark than necessary to identify its product, and whether Sony suggested OKO's sponsorship or endorsement of its product. Therefore, the issue of nominative fair use cannot be resolved at the pleading stage and Sony's motion to dismiss should be denied.

## 2. Sony's Motion to Dismiss Should Be Denied Because Sony's Use Of OKO's ANDROID And ANDROID SMARTWATCH Marks Is An Infringing, Trademark Use That Does Not Qualify As Nominative Fair Use

Even if the court finds that analysis of nominative fair use is appropriate at this stage, Sony's motion to dismiss should be denied because Sony fails to satisfy all three prongs of the

*Cairns*, 292 F.3d at 1151 n.9 (referring to *In re Dual-Deck* as "[a] good example of classic fair use")).

CHRISTIE, PARKER & HALE, LLP

1    Ninth Circuit's test for nominative fair use.   Since the test for nominative fair use is

2    conjunctive, all elements must be met for the defense to apply.  *Yeager v. Cingular Wireless*

3    *LLC*, 627 F. Supp. 2d 1170, 1178 n.9 (E.D. Cal. 2008).

4                    a)        **Sony's "SmartWatch" Product Is Readily Identifiable**

5                              **Without Use Of OKO's ANDROID And ANDROID**

6                              **SMARTWATCH Marks**

7            In  this  case,  Sony  claims  it  is  using  OKO's  ANDROID  and  ANDROID

8    SMARTWATCH marks to identify Sony's own "SmartWatch" product.  *See*, *e.g.*, Motion to

9    Dismiss, pp. 7, 8, 9; Compl. Ex. C at 42 (Sony's ad refers to Sony's product as "This

10   Android$^{TM}$ watch").   However, Sony's "SmartWatch" product is readily identifiable without

11   use of OKO's ANDROID and ANDROID SMARTWATCH marks.  This is especially true

12   given the fact that Sony's "SmartWatch" product is not made by OKO.  A jury could therefore

13   conclude that Sony's use of OKO's ANDROID mark is not nominative fair use because Sony

14   does  not  need  to  use  OKO's  ANDROID  mark  to  sell  these  products.   *See*, *e.g.*, *Haas*

15   *Automation, Inc. v. Denny*, 2013 U.S. Dist. LEXIS 179094, at *28 (C.D. Cal. December 4,

16   2013) (where defendant sold parts as "Haas" parts even though the parts were not made by

17   Haas, "[a] jury could conclude that Defendants' use of Plaintiff's mark is not nominative fair

18   use because Defendants do not need to use Plaintiff's mark to sell such parts").[3]

19           In addition, the first element of the nominative fair use test "must be read in context

20   with  the  other  two  elements."   *Summit Entm't, LLC v. B.B. Dakota, Inc.*, 2011 U.S. Dist.

21   LEXIS 151582, at *28 (C.D. Cal. November 21, 2011).  In *Summit*, a clothing manufacturer

22   used the plaintiff's TWILIGHT trademark to market one of the manufacturer's jackets as "the

23   _____

24   [3] Sony misinterprets the first element of the nominative fair use test by analyzing this element
     in reference to Google's operating system.  *See* Motion to Dismiss, p. 7.  Under the first

25   element, "*the product in question* must be one not readily identifiable without use of the
     trademark."  *New Kids*, 971 F.2d at 308, emphasis added.  Here, the product in question is not

26   Google's operating system because Sony is not selling Google's operating system.
     Compatibility with Google's operating system is merely one attribute of Sony's product.  Nor

27   has Sony cited any authority supporting the principle that the doctrine of nominative fair use

28   applies to a defendant's use of a plaintiff's mark to identify a third party's product.

CHRISTIE, PARKER & HALE, LLP

1   Twilight jacket," because it had been worn by a character in the plaintiff's "Twilight" movie.

2   *Id*. at *2-*4.  The court found that "while it may have been necessary to make some reference

3   to the movie to explain how the jacket had been used and by whom it was worn," that could

4   have been done without renaming and marketing the defendant's product as "the Twilight

5   jacket." *Id*. at *26-*28.

6         Similarly, here, Sony consistently and repeatedly uses the confusing phrases "Android

7   watch," "Android[TM] watch," "Android[TM] compatible watch" and "Android compatible

8   SmartWatch" throughout its advertising.  Yet, Sony did not need to use those terms to describe

9   its product.  In fact, Sony has described the compatibility of its "SmartWatch" product using

10  statements such as "works with most Android phones" and "works with any smartphone or

11  tablet running Android 4.0 or later," or "If you have an Android smartphone, here is the perfect

12  accessory."[4]  Thus, Sony has shown in its own advertisements that it need not use OKO's

13  marks to identify its SmartWatches.  As such, the first element of the nominative fair use test

14  has not been met by Sony.

15          **b)**    **The Extent Of Sony's Use Of OKO's ANDROID and**

16             **ANDROID SMARTWATCH Marks Is More Than**

17             **Reasonably Necessary To Identify The Product**

18      "What is 'reasonably necessary to identify the plaintiff's product' differs from case to

19  case."  *Cairns*, 292 F.3d at 1154.  For instance, "[w]here…the description of the defendant's

20  product depends on the description of the plaintiff's product, more use of the plaintiff's

21  trademark is 'reasonably necessary to identify the plaintiff's product' than in cases where the

22  description of the defendant's product does not depend on the description of the plaintiff's

23  product." *Id*.  Sony is not using OKO's ANDROID and ANDROID SMARTWATCH marks,

24

25      [4] In its Motion, Sony claims that OKO is seeking to prevent Sony "from using the term 'Android' to accurately refer to its Sony SmartWatches."  Motion to Dismiss, p. 1.  Sony is

26  mistaken.  OKO only seeks to prevent Sony from using OKO's ANDROID and ANDROID SMARTWATCH marks in describing its product as an Android watch, Android compatible

27  watch or Android compatible SmartWatch.  Describing Sony's product as compatible with

28  Android phones or the Android 4.0 operating system, by itself, does not infringe OKO's marks.

CHRISTIE, PARKER & HALE, LLP

1   however, to identify OKO's products, and as such, no amount of use of OKO's ANDROID and

2   ANDROID SMARTWATCH marks by Sony is necessary here.  Further, even assuming that

3   some use of OKO's ANDROID and ANDROID SMARTWATCH marks is appropriate,

4   because the description of Sony's "SmartWatch" product does not depend at all on any

5   description of OKO's product, the amount of "reasonably necessary" use is far less than it

6   would be otherwise.

7        Sony contends that "Sony's use of the Android term is [] no more than necessary to

8   indicate that the Sony SmartWatch is compatible with mobile products using Google's Android

9   operating system."  Motion to Dismiss, p. 8.  However, Sony's goal of indicating compatibility

10  is already met by its statements that its product "works with most Android phones" and "works

11  with any smartphone or tablet running Android 4.0 or later."  Accordingly, Sony's additional

12  use of the confusing phrases "Android watch," "Android$^{TM}$ watch," "Android compatible

13  watch" and "Android compatible SmartWatch" go beyond what is reasonably necessary to

14  communicate compatibility.

15       As significantly, by using the ANDROID mark in the name of an accessory product,

16  i.e., a watch, Sony has **exceeded** the scope of use permitted by Google's own brand guidelines

17  for Google's Android brand.[5]  Sony's violation of these guidelines is further evidence that Sony

18  is using the ANDROID mark more than is "reasonably necessary" to identify its products.

19  Accordingly, the second element of the nominative fair use test has not been met by Sony.

20               c)     <u>Sony's Use Of OKO's ANDROID and ANDROID</u>

21                      <u>SMARTWATCH Marks Suggests Sponsorship Or</u>

22                      <u>Endorsement By OKO</u>

23       Courts considering the third element of the nominative fair use test have found that

24  extensive use of the plaintiff's mark in connection with the defendant's product "at the very

25  least implie[s] sponsorship" of the defendant's product.  *Summit*, 2011 U.S. Dist. LEXIS

26  151582, at *31.  "Consumers may reasonably infer sponsorship or endorsement if a company

---

[5] Google's brand guidelines for ANDROID states that "ANDROID cannot be used in names of applications or accessory products, including . . . **watches**." (Compl. ¶ 24, emphasis added).

CHRISTIE, PARKER & HALE, LLP

1   uses an unnecessary trademark or 'more' of a mark than necessary." *Toyota Motor Sales,*

2   *U.S.A., Inc.*, 610 F.3d at 1176.

3          For example, in *Canfield v. Health Communs., Inc.*, 2008 U.S. Dist. LEXIS 28662, at

4   *1 (C.D. Cal. April 1, 2008), the defendant exhibited the plaintiff's mark prominently at the top

5   of the defendant's publications, which the court noted created at least a potential suggestion of

6   sponsorship.  *Id*. at * 23-24.  Because of the similar nature of the defendant's publications and

7   the plaintiff's book products, the court found that the prominence of the mark created a

8   suggestion of sponsorship under the third element of the nominative fair use test.  *Id*. at *24.  In

9   particular, both the plaintiff's trademarked books and the defendant's publications featured a

10  compilation of writings relevant to a similar group of people, which "greatly heightens the

11  possibility that consumers will mistakenly believe in light of the prominence of Plaintiff's mark

12  that [the defendant's publications]…are in fact sponsored by the Plaintiffs."  *Id*. at *25.  This

13  confusion was made "considerably more probable" by the defendant's selection of titles that

14  were "strongly reminiscent" of the plaintiff's trademarked books.  *Id*. at *25-26.

15         Likewise, in this case, Sony has exhibited OKO's ANDROID and ANDROID

16  SMARTWATCH marks prominently at the top of its advertising, creating a potential

17  suggestion of sponsorship by OKO.  *See, e.g.*, Compl. Ex. C at 42 ("Android™ watch" at the

18  top of the page, beneath the title and next to an image of the product), at 45 ("Made for

19  Android" and "world's first Android compatible SmartWatch" at the top of page beneath the

20  title next to an image of the product), and at 48 ("Android™ compatible watch" is used at the

21  top of the page, beneath the product title and next to an image of the product).

22         Due to the similar nature of Sony's "SmartWatch" product and OKO's watch products,

23  the prominence of OKO's ANDROID and ANDROID SMARTWATCH marks creates a

24  suggestion of sponsorship under the third element of the nominative fair use test.  The fact that

25  both parties sell watches, and in particular smart watches, enhances the possibility that

26  consumers will mistakenly believe —  in light of the prominence of OKO's ANDROID and

27  ANDROID SMARTWATCH marks — that Sony's product is in fact sponsored by OKO.  This

28  confusion is made even more likely by (1) Sony's addition of the word "watch" after OKO's

1   ANDROID mark, because the term "watch" is not only "strongly reminiscent of" OKO's

2   trademarked goods, it describes the exact goods that OKO sells and (2) Sony's use of the ™

3   symbol after Android.

4       Sony attempts to play down the prominence of OKO's ANDROID mark in its

5   advertising by noting that the mark is displayed "only after the boldface and more prominent

6   term 'SmartWatch,' and alongside a large image of each product bearing the famous 'SONY'

7   brand name across the top." Motion to Dismiss, p. 8. However, the term "SmartWatch," like

8   the term "watch," is "strongly reminiscent" of products sold by OKO, and thus only serves to

9   enhance the perceived connection between Sony's product and OKO. The image of the

10  product bearing the SONY brand name does little to diminish the confusion created by Sony's

11  use of OKO's ANDROID and ANDROID SMARTWATCH marks, because consumers could

12  be under the impression that OKO sponsors or endorses Sony's use of the mark. In fact,

13  Sony's use of the phrase "Made for Android" (Compl. Ex. C at 45) reinforces this confusion.[6]

14      Contrary to Sony's assertion, the phrases actually used in Sony's advertising, including

15  "Android compatible SmartWatch" (Compl. Ex. C at 45), "Android-compatible" (Compl. Ex. C

16  at 46), and "Android[TM] compatible watch" (Compl. Ex. C at 48), do not equate to a statement

17  that "the term Android refers to compatibility with mobile devices running on the Android

18  operating system."[7] Sony has done nothing to reduce the potential confusion created by its use

19  _____

20  [6] Sony alleges that "for the same reasons," its use of OKO's ANDROID mark in metatags is
    fair. However, as noted by one district court, "the use of a mark as a metatag is substantially
21  different from using the mark in a phrase." *L&A Designs*, 2012 U.S. Dist. LEXIS 60760, at
    *15 (expressing doubt as to whether the threshold condition for nominative fair use – whether
22  the mark was used to refer to the trademarked good – had been met concerning the defendant's
    use of the mark as a metatag). Although the Ninth Circuit has found that use of mark in a site's
23  metatags can constitute nominative fair use, *see Playboy Enterprises v. Welles*, 279 F.3d 796,
    801 (9th Cir. 2002), the court's decision in that case was based on the fact that the metatags did
24  not repeat the trademarked term extensively. *Id.* at 803-04. In another case the Ninth Circuit
    found that repeated use of a plaintiff's trademark as a metatag was not nominative fair use.
25  *Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1041 (9th Cir. 2003). This case is more
    akin to *Horphag* than *Welles* because Sony has extensively and repeatedly used OKO's
26  ANDROID mark as a metatag. *See* Compl. ¶ 22 and Compl. Ex. D.

27  [7] Sony also relies on a hypothetical from McCarthy on Trademarks to make its point. *See*
28  Motion to Dismiss, p. 5. The hypothetical indicates that a software company's use of the

CHRISTIE, PARKER & HALE, LLP

1   of OKO's ANDROID and ANDROID SMARTWATCH marks.  As such, Sony's reliance on

2   cases in which the defendant clearly distinguished itself from the plaintiff is misplaced.  *See*,

3   *e.g.*, *1800 GET THIN, LLC v. Hiltzik*, 2011 WL 3206486, at *3 (C.D. Cal. July 25, 2011)

4   (defendant's articles and comments did not portray plaintiff in a positive light); *Adaptive Mktg.*

5   *LLC v. Girard Gibbs LLP*, 2009 WL 8464168, at *4 (C.D. Cal. Oct. 9, 2009) (defendant's

6   advertising did not include plaintiff's trademark alone); *Welles*, 279 F.3d at 803 (defendant's

7   website contained a clear statement disclaiming any connection to plaintiff); *Architectural*

8   *Mailboxes, LLC v. Epoch Design, LLC*, 2011 WL 1630809, at *3 (S.D. Cal. April 28, 2011)

9   (defendant's website clearly identified plaintiff as the manufacturer of the product, and every

10  statement on the website about plaintiff was negative and a criticism of the plaintiff's product);

11  *Stevo Design, Inc. v. SBR Marketing Ltd.*, 968 F. Supp. 2d 1082, 1089 (D. Nev. 2013)

12  (defendant's website criticized plaintiff).  Therefore, the third element of the nominative fair

13  use test is not met by Sony.

14  **III.    <u>CONCLUSION</u>**

15          For the reasons set forth above, Sony's Motion to Dismiss OKO's Complaint should be

16  denied by the Court.

17  DATED: July 7, 2014                            Respectfully submitted,

18                                                 CHRISTIE, PARKER & HALE, LLP

19                                                 By____/s/Howard A. Kroll_____
                                                       Howard A. Kroll
20                                                     Attorneys for Plaintiff,
                                                       OKO INTERNATIONAL CO.

21  LLB PAS1301997.5-*-07/7/14 2:29 PM

22  statement, "Our new GREENBEAN program will run flawlessly on
23  MICROSOFT WINDOWS," is a fair use because the company is using the words
    MICROSOFT WINDOWS to identify the true owner in order to convey the message of alleged
24  product compatibility.  4 McCarthy on Trademarks and Unfair Competition §23:11.50 (4th
    ed.).  However, in the above hypothetical it is more apparent that the subject phrase
25  MICROSOFT WINDOWS is being used to identify the true owner because the phrase contains
    the actual name of the true owner, Microsoft.  In this case, the name of the true owner of the
26  compatible operating system is Google.  The ANDROID mark used in Sony's advertising does
27  not include the name Google, nor does Sony use the mark in conjunction with Google's name
    in a way that would make clear that it is using the mark to refer to Google's operating system
28  and not OKO.

CHRISTIE, PARKER & HALE, LLP